UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CHEP USA, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> AUSTIN BLOCK & QUARRY, INC., § <br> ESPINOZA STONE, INC., § <br> CAPITOL PRODUCTS, INC. D/B/A § <br> CAPITOL PRODUCTS OF TEXAS, INC., § <br> § <br> *Defendants.* § | Civil Action No. 1:22-cv-80 |

**PLAINTIFF'S ORIGINAL COMPLAINT, REQUEST FOR
PERMANENT INJUNCTION AND DECLARATORY JUDGMENT**

Plaintiff CHEP USA ("CHEP") files its Original Complaint, Request for Permanent Injunction and Declaratory Judgment (the "Complaint") complaining of Defendants, AUSTIN BLOCK & QUARRY, INC.; ESPINOZA STONE, INC.; and CAPITOL PRODUCTS, INC. d/b/a CAPITOL PRODUCTS OF TEXAS, INC. (sometimes referred to herein as "Austin Block," "Espinoza Stone," "Capitol Products," and/or collectively as the "Defendants"). In support of the Complaint, Plaintiff alleges and shows the Court as follows:

**I.
PARTIES**

1. CHEP USA is a New York partnership with a principal place of business at 5897 Windward Parkway, Alpharetta, Georgia 30005.

2. Austin Block & Quarry, Inc. is a Texas domestic for-profit corporation organized under the laws of the State of Texas. Service of process on Austin Block

may be effected pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving the registered agent, West Short & Howell, PLLC at the address of the registered agent, 313 W. 10th St., Georgetown, Texas 78626 or its principal place of business located at 7531 North Interstate 35, Georgetown, Texas 78626.

3.   Espinoza Stone, Inc. is a Texas domestic for-profit corporation organized under the laws of the State of Texas. Service of process on Espinoza Stone may be effected pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving the registered agent, Jose Jesus Espinoza, at the address of its registered agent, PO Box 274, Jarrell, Texas 76537 or its principal place of business located at address, 1465 County Road 234, Georgetown, Texas 78628.

4.   Capitol Products, Inc. d/b/a Capitol Products of Texas, Inc., is a foreign for-profit corporation organized under the laws of the State of Delaware and registered to do business in the State of Texas. Service of process on Capitol Products may be effected pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving the registered agent, Terri Rose, at the address of the registered agent, 221 W. 6th Street, Suite 960, Austin, Texas 78701 or its principal place of business located at 1465 C.R. 234, Georgetown, TX 78633.

## II.
## JURISDICTION AND VENUE

5.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. Venue is proper in under 28 U.S.C. § 1391 (b)(1), (2) because it is the judicial district in which Defendants reside and it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.
## EXHIBITS

7. Attached hereto and incorporated herein for all purposes are true and correct copies of the following Exhibits:

| **Exhibit "A"** | CHEP Asset Identification & Ownership Flyer |
| --- | --- |
| **Exhibit "B"** | December 17, 2019, Letter from CHEP to Espinoza Stone |
| **Exhibit "C"** | April 24, 2020, Letter from CHEP to Austin Block |
| **Exhibit "D"** | Certificate of Formation For-Profit Corporation for Austin Block & Quarry, Inc. |
| **Exhibit "E"** | Screenshot of the Austin Block & Quarry, Inc. website |
| **Exhibit "F"** | Screenshot of the Espinoza Stone, Inc. website |
| **Exhibit "G"** | Screenshot of the Capital Products, Inc. website |
| **Exhibit "H"** | Articles of Incorporation for Espinoza Stone, Inc. |
| **Exhibit "I"** | Application for Registration of a Foreign For-Profit Corporation for Capitol Products, Inc. d/b/a Capitol Products of Texas, Inc. |
| **Exhibit "J"** | Photographs of destroyed CHEP pallets at Defendants' business |

## IV.
## FACTUAL BACKGROUND

### A. Pallets and Commerce

8. Typically, as goods move in commerce from their manufacturers, to distributors, to wholesalers, and finally to retailers, where they are made available

for purchase by the average consumer, wooden pallets are used for purposes of hauling, loading and unloading, and storing the goods.

9. In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes, and level of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called white wood pallets.

10. In general, these pallets are **bought** by manufacturers who place their product on these wooden platforms. The manufacturers then sell their product, along with the white wood pallet, to their distributors. The distributors then re-use these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them to those in need of pallets, or may mulch the pallets.

11. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to break because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

    B.    **CHEP Pallets**

12. CHEP offers a better option for the pallet needs of manufacturers and/or distributors of products and goods.

13. Instead of purchasing new or recycled pallets for each shipment, manufacturers can lease pallets from CHEP as part of a national pallet pool.

CHEP, which operates out of over 150 CHEP service centers across the United States, leases its pallets, pursuant to its form of pallet rental agreement.

14.	Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high quality pallets owned and maintained by CHEP and, after inspected and repaired, if necessary, are used over and over again by the manufacturers to ship their products.

15.	CHEP has invested significant resources, in time and money, in maintaining superior, reliable, and safe pallets.

16.	The CHEP pallet pool rental system involves the shared use of high quality pallets by multiple customers or users. Although there are variations, the following is a general explanation of how the system works: CHEP leases its pallets to manufacturers who use the CHEP pallets as a platform for the transportation of goods to their distributors. The distributors in turn use the CHEP pallets within their distribution system until the original manufacturer's product is emptied from the pallet. The empty pallets are then set aside for return to or collection by CHEP. At CHEP service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired and/or repainted (if necessary) and then sent back to manufacturers to repeat the cycle again.

17.	CHEP's unique system, where high quality pallets are constantly maintained, controlled, tracked and reused, benefits the entire supply chain. Manufacturers receive consistent, high quality pallets, reduced pallet expense, reduced transportation costs, and reduced product damage. Distributors and

retailers benefit from faster loading and unloading, reduced product damage, and reduced pallet expense.

18. Importantly, the consistent high quality of CHEP's pallets significantly reduces the number of accidents caused by faulty or damaged pallets. Safety is improved at all levels from the manufacturer's plant to the distribution center to the retail store.

19. CHEP's system also removes costs and environmental burdens associated with waste disposal. CHEP estimates that its pallet program saves more than two million tons of solid waste each year. CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

20. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers and distributors. CHEP continues to invest tens of millions of dollars a year to maintain and supplement its pallet pool.

21. ***CHEP NEVER SELLS ITS PALLETS***. The success – indeed the existence – of CHEP's pallet pool rests on the fundamental principle that CHEP maintains ownership over all of its pallets, which permits CHEP to inspect its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

22. CHEP's agreements with manufacturers and distributors expressly provide that CHEP owns the CHEP pallets and that the CHEP pallets may never be bought and sold. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo, and bear the company's toll-free telephone number and the

words "PROPERTY OF CHEP." A true and correct copy of CHEP's "CHEP Asset Identification & Ownership" flyer is attached hereto as **Exhibit "A"** and incorporated herein for all purposes.

23. Pursuant to its Rental Agreement, CHEP always retains absolute ownership of all of its pallets.

24. The leasing process begins with CHEP entering into an agreement with a manufacturer of goods in need of pallets.

25. In order to retain control and dominion over its pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors. Before a lessee can ship its product on a CHEP pallet to a downstream entity, it must first obtain approval from CHEP, or must know that the downstream entity is already a customer of CHEP.

26. CHEP typically charges its lessees a pallet rental fee on each CHEP pallet within their possession. In this manner, CHEP has created a "leasing pool" of CHEP pallets, and it typically falls on the secondary customer, not the lessee, to return CHEP pallets to CHEP.

27. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel. CHEP's asset recovery team conducts tens of thousands of calls and physical visits annually. In particularly egregious cases, CHEP pursues legal action, both in cooperation with governmental enforcement authorities and

7

independently, to protect, recover and retrieve its pallets. In visiting an entity with which it does not have a contractual relationship, such as Defendants, CHEP will make overtures to that entity to consider entering into an agreement with CHEP.

28. The approximate value of each CHEP pallet is currently $26.00.

### C. Defendants and Theft of CHEP Pallets

29. Inevitably and unfortunately, CHEP is unable to recover all of its pallets.

30. Defendants do not have any contractual or other business relationship with CHEP and should never be in possession of any CHEP pallets.

31. Over the course of several months and multiple interactions, a CHEP representative visited Defendant(s) on numerous occasions in an effort to recover the CHEP pallets, during which he observed CHEP pallets being wrongfully held at Defendants' premises.

32. CHEP demanded Defendants to return CHEP's pallets on multiple occasions, explaining that it was unlawful for anyone to buy, sell, alter, trade, or destroy CHEP pallets. A true and correct copy of a letter sent to Defendant, Espinoza Stone is attached hereto as **Exhibit "B"** and incorporated herein for all purposes. A true and correct copy of a letter sent to Defendant, Austin Block is attached hereto as **Exhibit "C"** and incorporated herein for all purposes.

33. To date, Defendants have refused to allow the recovery of the CHEP pallets wrongfully and illegally being held by Defendants.

34. Upon information and belief, Defendants are in possession of well over 1,000 CHEP pallets.

### D. Relationship of Defendants

35. Although each Defendant is a separate legal entity, they are so intertwined that the causes of action apply to all Defendants. For example:

### D-1. Defendant, Austin Block & Quarry, Inc.

36. The Texas Secretary of State website lists the address for Defendant Austin Block & Quarry, Inc. as 7531 N. Interstate 35, Georgetown, Texas 78626-1843. The Certificate of Formation lists the Director as Jose J Espinoza, PO Box 274, Jarrell, Texas 76537. A true and correct copy of the Certificate of Formation For-Profit Corporation for Austin Block & Quarry, Inc. is attached hereto as **Exhibit "D"** and incorporated herein for all purposes.

37. The website for Austin Block & Quarry, Inc. also lists its address as, 7531 N. Interstate 35, Georgetown, Texas 78626. However, there is no such physical address. The correct address is 7531 N. Interstate 35, Jarrell, Texas 76537. Further, the website contains two links one of which is to Espinoza Stone, Inc. and the other is to KCJ Block, LLC. A true and correct copy of a screenshot of the Austin Block & Quarry, Inc. website is attached hereto as **Exhibit "E"** and incorporated herein for all purposes. A true and correct copy of a screenshot of the Espinoza Stone, Inc. website is attached hereto as **Exhibit "F"** and incorporated herein for all purposes.

38. Clicking on the Espinoza Stone link takes you to this Espinoza Stone website, however, clicking on the KCJ Block, LLC link takes you to the website of Capitol Products, Inc. A true and correct copy of a screenshot of the Capital Products, Inc. website is attached hereto as **Exhibit "G"** and incorporated herein for all purposes.

9

*Plaintiff's Original Complaint, Request for*
*Permanent Injunction and Declaratory Judgment*
60780371;1

**D-2.   Defendant, Espinoza Stone, Inc.**

39. The Articles of Incorporation of Espinoza Stone, Inc. on file with the Texas Secretary of State lists the address of its principal place of business as 1465 County Road 234, Georgetown, Texas, 78628 and the initial registered agent at that address as Jose Jesus Espinoza. The mailing address is listed as P.O. Box 274, Jarrell, Texas, 76537. A true and correct copy of the Articles of Incorporation for Espinoza Stone, Inc. is attached hereto as **Exhibit "H"** and incorporated herein for all purposes. Further, the website for Espinoza Stone lists its address as 1465 County Road 234, Georgetown, Texas 78628.

**D-3.   Defendant, Capitol Products, Inc. d/b/a Capitol Products of Texas, Inc.**

40. The Application for Registration of a Foreign For-Profit Corporation of Capitol Products, Inc. d/b/a Capitol Products of Texas, Inc. on file with the Texas Secretary of State lists the principal office address as 1465 County Road 234, Georgetown, Texas 78633. It also lists Jose J Espinoza as a Director. A true and correct copy of the Application for Registration of a Foreign For-Profit Corporation for Capitol Products, Inc. d/b/a Capitol Products of Texas, Inc. is attached hereto as **Exhibit "I"** and incorporated herein for all purposes. Further, the website for Capitol Products lists its address as 7531 N. Interstate 35, Jarrell, Texas 76537.

## V.
## CAUSES OF ACTION AS TO ALL DEFENDANTS

41. All paragraphs above are incorporated herein as if set out fully.

42. The causes of action set for below include Conversion, and Violation of the Texas Theft Liability Act.

### A.     Conversion

43.   All paragraphs above are incorporated herein as if set out fully.

44.   Plaintiff owns the CHEP pallets which are personal property.

45.   Defendants have in the past and continue to wrongfully exercise dominion or control over the CHEP pallets despite notice that Defendants do not have any ownership rights with respect to CHEP pallets and does not have any right to possess CHEP pallets.

46.   At the time Defendants came into possession of CHEP pallets, Defendants did not own CHEP pallets and did not have any right to possess CHEP pallets.

47.   Plaintiff has been damaged by Defendants' continued actions with respect to the CHEP pallets.

48.   As a result of Defendants' conversion of the CHEP pallets, Plaintiff seeks return of the pallets and actual monetary damages in the sum of money necessary to compensate Plaintiff for actual losses sustained including, but not limited to, (i) loss of value; (ii) loss of use; (iii) shipping costs; (iv) and travel expenses.

49.   Plaintiff's injury resulted from Defendants' malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

### B.     Violation of Texas Theft Liability Act

50.   All paragraphs above are incorporated herein as if set out fully.

51.   At all times CHEP had a possessory right to the CHEP pallets.

52.   Defendants appropriated the CHEP pallets with the intent to deprive CHEP of its pallets.

53. Defendants unlawfully appropriated, secured, or stole the CHEP pallets by taking them without CHEP's effective consent in violation of Section 31.03 of the Texas Penal Code.

54. Defendants were informed by Plaintiff that the CHEP pallets were stolen and Defendants appropriated the CHEP pallets knowing that the CHEP pallets were stolen.

55. CHEP sustained and continues to sustain monetary damages as a result of the theft.

56. Upon proof of actual damages, Plaintiff seeks additional statutory damages up to $1,000 from each Defendant pursuant to Texas Civil Practice & Remedies Code §134.005(a)(1).

57. Plaintiff also seeks court costs and attorney fees from Defendants pursuant to Texas Civil Practice & Remedies Code §134.005(b).

58. Plaintiff's injury resulted from Defendants' malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## VI.
## DECLARATORY JUDGMENT

59. All paragraphs above are incorporated herein as if set out fully.

60. Plaintiff seeks a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code to establish the rights, status, and ownership of the CHEP pallets currently illegally possessed by Defendants.

61. CHEP pallets are solely and exclusively CHEP's property and that Defendants do not have any ownership or other rights to the CHEP pallets.

62. Plaintiff is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a justiciable controversy about the rights and status of the parties and the declaration would resolve the controversy; (ii) the controversy is real and substantial, involving a genuine conflict of tangible interests and not merely a theoretical dispute; and (iii) absent the issuance of declaratory relief, CHEP will be irreparably injured.

63. Plaintiff requests that the Court declare that CHEP is the sole and exclusive owner of CHEP pallets and Defendants do not have any ownership or other rights to the CHEP pallets.

## VII.
## REQUEST FOR PERMANENT INJUNCTION

64. All paragraphs above are incorporated herein as if set out fully.

65. Plaintiff is entitled to and requests a Permanent Injunction enjoining Defendants from continuing to wrongfully possess, use, and assert control over the CHEP pallets, and to require Defendants to preserve the pallets.

66. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo, and bear the company's toll-free telephone number and the words "PROPERTY OF CHEP."

67. The CHEP pallets are located in Williamson County, Texas, at the location of Defendants' business operations which included, but are not limited to, 7531 N.

Interstate 35, Georgetown, Texas 78626 and 1465 County Road 234, Georgetown, Texas, 78628.

68. A reasonable conclusion may be drawn that Defendants will conceal, dispose of, ill-treat, waste, or destroy the CHEP pallets or remove the CHEP pallets from the county during suit. For example, after a CHEP representative visited Defendants places of business at 7531 N. Interstate 35, Georgetown, Texas 78626 and 1465 County Road 234, Georgetown, Texas, 78628, the representative found several CHEP pallets destroyed. A true and correct copy of two photographs of destroyed CHEP pallets is attached hereto as **Exhibit "J"** and incorporated herein for all purposes.

69. Plaintiff seeks a Permanent Injunction to grant the injunctive relief Plaintiff is entitled to as part of the final judgment after trial.

## VIII.
## JURY TRIAL

70. Plaintiff respectfully demands a trial by jury.

## IX.
## PRAYER

Plaintiff respectfully requests that the Court issue citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

   a. A declaratory judgment that CHEP has sole and exclusive ownership over CHEP pallets.

   b. A permanent injunction enjoining Defendants from continuing to wrongfully use and possess Plaintiff's pallets.

   c. An order for return of the stolen or converted property.

d. Actual damages and exemplary damages.

e. Additional Statutory Damages up to $1,000 from each Defendant.

f. Pre-judgment and post-judgment interest along with Court costs.

g. Attorney fees.

h. All other relief to which Plaintiff is entitled, whether in equity or in law.

Respectfully submitted.

**AKERMAN LLP**

*/s/ Rola Daaboul*
**Rola Daaboul**
State Bar No. 24068473
500 W 5th Street, Suite 1210
Austin, Texas 78701
Telephone: 737.999.7107
Rola.daaboul@akerman.com

**ATTORNEYS FOR PLAINTIFF, CHEP USA**

# VERIFICATION

STATE OF ARIZONA § §
COUNTY OF MARICOPA §

BEFORE ME, the undersigned authority, personally appeared Mario Birsa, who being duly sworn deposes and says:

1. My name is Mario Birsa, and I am the National Asset Protection & Security Manager of CHEP USA ("CHEP"), the Plaintiff in the above-captioned lawsuit. I am over the age of twenty-one (21) and am competent to make this Affidavit and have personal knowledge of the facts set forth herein.

2. I have read Plaintiff's Original Complaint filed herein and state that the facts set forth in the Complaint, are true and correct.

FURTHER AFFIANT SAYETH NOT.

_____
Mario Birsa
National Asset Protection & Security Manager
for Plaintiff, CHEP USA

SUBSCRIBED AND SWORN TO BEFORE ME on the 20 day of ~~November,~~ JANUARY ~~2021~~, 2022 to certify which witness my official hand and seal of office.

_____
Notary Public, State of Arizona

[Notary Seal: MICHAEL R. WEBB, NOTARY PUBLIC, STATE OF ARIZONA, MARICOPA COUNTY, COMMISSION # 538675, EXPIRES JAN. 25, 2022]

16

*Plaintiff's Original Complaint, Request for Permanent Injunction and Declaratory Judgment*
60780371;1